UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

SHAWN MICHAEL MARTIN,

    Plaintiff,

v.

D. MUNSEY, R. GEORGE, J. THAYER, and
B BOGARDUS,

    Defendants.

Case No. 2:17-CV-01299-YY

OPINION AND ORDER

YOU, Magistrate Judge:

*Pro se* plaintiff Shawn Michael Martin brings this action under 42 U.S.C. § 1983 alleging that two dentists and two dental assistants employed by the Oregon Department of Corrections ("ODOC") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Compl. ¶ 15, ECF #2. He alleges a two-month delay in dental care constituted a wanton infliction of unnecessary pain. He seeks injunctive relief and damages. Defendants have moved for summary judgment (ECF #82).[1] For the reasons set forth below, defendants' motion is granted.

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence and is required to draw all justifiable inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Id*. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff entered ODOC custody on February 23, 2017. Decl. of Dr. Gregory Shook, D.M.D. ¶ 3 ("Shook Decl."), ECF #83. He was scheduled for a dental intake exam to determine the status of his dental needs. However, plaintiff was almost immediately placed in the Disciplinary Segregation Unit ("DSU") for engaging in disrespectful and disobedient conduct. Decl. of Shawn Martin ¶ 19 ("Martin Decl."), ECF #86; Plaintiff's Statement of Disputed Factual Issues ("Pl.'s Fact Statement"), Ex. 40, ECF#91-1 (copy of ODOC Misconduct Report describing plaintiff's behavior).

ODOC takes additional security precautions at the dental clinic for patients housed in DSU, including providing two correctional officers during dental appointments for the security of the dentists and their staff. Shook Decl. ¶¶ 7-8. On March 3, 2017, a nonparty dental assistant rescheduled plaintiff's exam because there were not enough correctional officers available to accompany him to the dental clinic. *Id.* ¶ 8 (naming dental assistant A. Kidwell).

On March 10, 2017, plaintiff sent an Inmate Communication Form ("grievance") to the dental clinic complaining that one of the teeth under the bridge in his mouth was causing him pain, that the bridge had come loose, and that there was a foul odor coming from the area with the bridge. *Id.* ¶ 9. Plaintiff did not request pain medication in this grievance, but he did request dental floss. Shook Decl., Ex. 1, at 16. The dental clinic responded that plaintiff's dental intake exam had been scheduled. *Id.* Plaintiff's appointment was scheduled for March 15, 2017, but inmates are not told when they have appointments as a security measure. Shook Decl. ¶ 15.

The dental clinic took x-rays of plaintiff's mouth on March 14, 2017, and a nonparty dentist, Dr. Stephanie Swyter, D.M.D., performed plaintiff's dental intake exam the next day. *Id.* ¶¶ 9-10. Dr. Swyter did not identify any conditions that called for prompt or urgent attention during her examination. *Id.* ¶ 12.

Plaintiff submitted another grievance on March 29, 2017. *Id.* ¶ 15. ODOC staff responded by advising plaintiff that he had an appointment to be seen by the dental clinic. *Id.* Plaintiff submitted another grievance on April 12, 2017, and ODOC responded about two weeks later explaining his transfer to a new facility had caused a delay. Pl.'s Fact Statement, Ex. 20 (Grievance Response dated April 27, 2017). ODOC notified the receiving facility of plaintiff's need for dental care. *Id.*

On April 18, 2017, plaintiff reported to a triage nurse that there was no change in his condition. Shook Decl. ¶ 17. The triage nurse also determined that plaintiff's condition did not require urgent attention. *Id.*

Dr. David Miller, D.M.D., examined plaintiff on May 1, 2017. Plaintiff complained of tooth pain. *Id.* ¶ 20. Dr. Miller's chart notes show that plaintiff had many missing teeth, a fractured porcelain bridge, significant decay in teeth supporting the bridge, moderate gum disease, a loose abutment crown, two diseased teeth with poor restorability prognosis (numbers 2 and 7), and palpation testing that was within normal limits. *Id.* Plaintiff indicated he would prefer a root canal to extraction on teeth numbers 2 and 7 and would submit paperwork for approval to the Therapeutic Level of Care Committee. *Id.*

The committee denied plaintiff's request for a root canal, citing plaintiff's high rate of decay and poor oral hygiene. *Id.* ¶ 21. Instead, the committee recommended extraction and approved the fabrication of partial dentures following the extractions. Pl.'s Fact Statement, Ex. 4.

Dr. Miller discussed the committee's decision with plaintiff on May 10, 2017, and plaintiff agreed to the extractions. Shook Decl. ¶ 22. On May 10, 2017, Dr. Miller extracted two teeth and performed four additional extractions on June 14, 2017. *Id.* ¶ 23. Plaintiff was given an anesthetic during the procedures, and Norco (hydrocodone), Roxicet (oxycodone and acetaminophen), and Ibuprofen for pain afterwards. *Id.* ¶¶ 22-23. Additionally, ODOC always made Tylenol and Ibuprofen available to plaintiff. *Id.* ¶ 24.

The record also reflects that plaintiff took the pain killer Gabapentin before, during, and after his dental treatments. *Id.* ¶ 6. Nurse Practitioner Linda Gruenwald ("Gruenwald") prescribed plaintiff Gabapentin to manage chronic hip pain when plaintiff entered ODOC

custody in late February 2017. *Id.* Gruenwald prescribed 800 mg of Gabapentin twice per day for 15 days and, when that was insufficient, increased the dosage to three times per day. *Id.*

Plaintiff also declares he secured and used illegal narcotics to quell the pain. Martin Decl. ¶¶ 10, 24. Nevertheless, plaintiff declares that from March 23, 2017, until the extractions on May 10, 2017, his "tooth remained in constant paint. The pain never went away. At times it wasn't as severe as other times. However, the pain never went away." Martin Decl. ¶ 10; *see also id*. ¶¶ 2, 12 (describing intermittent pain). Plaintiff claims he complained to various ODOC staff about the pain. *Id.* ¶¶ 3, 5, 23.

## DISCUSSION

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Suchodolski v. Peters*, No. 1:17-cv-01113-AC, 2018 WL 4926300, at *9 (D. Or. Oct. 10, 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation marks and citation omitted). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Sawyer v. Cole*, No. 3:10-CV-00088-RCJ, 2012 WL 6210039, at *2 (D. Nev. Dec. 12, 2012), *aff'd*, 563 F. App'x 589 (9th Cir. 2014) (citing *Farmer*, 511 U.S. at 834). "Second, the prison official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id.* (citing *Farmer*, 511 U.S. at 837).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). "A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (en banc) (quotation marks and citation omitted). Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

With respect to the second, subjective component, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 835. Otherwise stated, "to violate the Eighth Amendment, a prison official must have a 'sufficiently culpable mind.'" *Guy v. Kimbrell*, No. CIVS03-1208-JAM-CMKP, 2008 WL 2774184, at *3 (E.D. Cal. June 27, 2008), *report and*

*recommendation adopted*, 2008 WL 3200855 (E.D. Cal. Aug. 7, 2008) (quoting *Farmer*, 511 U.S. at 834).

"However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference." *Brown v. Perez*, No. EDCV 14–2421–CJC (JEM), 2015 WL 2153451, at *4 (citing *Estelle*, 429 U.S. at 105–06). A "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* (citation and quotations omitted). "[N]or does a dispute between a prisoner and prison official over the necessity for or extent of medical treatment amount to a constitutional violation." *Toguchi*, 391 F.3d at 1058.

A delay in treatment in and of itself does not constitute deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). "[T]he delay must have caused substantial harm." *Id.* It is well established that a delay in non-emergency dental treatment lasting up to several months that has caused no additional physical damage and where the inmate has access to pain medication and temporary remedies does not rise to the level of a constitutional violation. *See, e.g.*, *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (recognizing that delay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation); *Banks v. Umatilla Cty. Jail*, No. 2:16-CV-00284-TC, 2018 WL 2376751, at *3 (D. Or. Mar. 26, 2018), *findings and recommendations adopted,* 2018 WL 2376092 (D. Or. May 24, 2018) (finding no significant harm where inmate was provided pain medication and salt water rinses during his seven-week wait to receive dental care). Even conduct resulting in short, periodic delays in the receipt of pain medication is not unconstitutional. *Estrada v. Sayre*, No. C 12-0592 LHK (PR), 2014 WL 3728161, at *8 (N.D. Cal. July 28, 2014), *aff'd,* 635 F. App'x 378 (9th Cir. 2016) (discussing back pain) (cited pursuant to Ninth Circuit Rule 36-3).

Here, defendants move for summary judgment on the second, subjective component of plaintiff's deliberate indifference claim. Mot. Summ. J. 6. Even viewing the evidence in the light most favorable to plaintiff, the record does not support a reasonable inference that defendants knew of a substantial risk of harm and disregarded it.

  A.  **Subjective Intent of Dentist Defendants**

Plaintiff names two dentists as defendants, Dr. Jeff Thayer, D.M.D. ("Dr. Thayer") and Dr. Brian Bogardus, D.M.D. ("Dr. Bogardus"). Plaintiff claims that they were aware of his complaints of pain but refused to see and treat him, and that their refusal constituted a wanton infliction of unnecessary pain.

To support this assertion, plaintiff points to the fact that Dr. Miller observed decay near the pulp and crestal bone on May 1, 2017, several days before he extracted plaintiff's teeth. Shook Decl., Ex. 1, at 7 (chart note by Dr. Miller indicating "[d]ecay appears near the pulp and near the crestal bone"). Dr. Thayer admits a tooth that needs to be extracted or treated with a root canal usually causes pain. Pl.'s Fact Statement, Ex. 37 (Thayer, Ans. Interrog. No. 9). However, as Dr. Bogardus further explained, whether a decaying tooth will cause pain depends on several factors including the 1) depth of decay, and 2) vitality of the pulp. *Id.*, Ex. 39 (Bogardus, Ans. Interrog No. 9). "Every case is different." *Id.* Moreover, a toothache is not necessarily considered a dental emergency: "It depends on several factors." *Id.*, Ex. 50 (Bogardus, Resp. Request Admis. Nos. 2, 3, 6, 7) (explaining that it is the role of the dentist to determine whether there is a dental emergency). Indeed, plaintiff does not assert that Dr. Miller ever told him that his condition required emergency care.

In fact, no dentist who examined plaintiff found his condition required urgent attention. Dr. Swyter, whom plaintiff has not named in this case, performed plaintiff's dental intake exam.

8 – OPINION AND ORDER

She determined that while plaintiff required non-emergency dental care, he presented with no urgent treatment needs. Shook Decl. ¶ 12. Further, none of ODOC's security or medical staff observed that plaintiff was in unbearable pain or required urgent care. After reviewing plaintiff's dental and treatment records, ODOC's dental director declared that "[t]he amount of decay and the state of [plaintiff's] oral hygiene at intake into ODOC did not require prompt or urgent extraction of these teeth and did not cause [plaintiff's] dental condition to worsen by the time of the extraction on May 10, 2017." *Id.* ¶ 25.

More importantly, though, there is no evidence that Dr. Thayer and Dr. Bogardus knew of plaintiff's condition and refused to see him. Plaintiff had been scheduled to see the dental clinic on April 17, 2017, but that appointment was canceled because Dr. Thayer was sick. Pl.'s Fact Statement, Ex. 36 (D. Munsey, Ans. Interrog. Nos. 1, 3, & 4). While Dr. Thayer knew plaintiff had requested to see a dentist for tooth pain, there is no evidence that Dr. Thayer knew plaintiff had an appointment and called in sick with the intention of prolonging plaintiff's pain. *Id.*, Ex. 37 (Thayer, Ans. Interrog. No. 10) (indicating Dr. Thayer called in sick on April 17, 2017, and was not aware plaintiff had an appointment that day). Further, there is no evidence that Dr. Bogardus even knew who plaintiff was during this time. *Id.*, Ex. 39 (Bogardus, Resp. Request Admis. Nos. 2, 3, 6, 7). Therefore, plaintiff has failed to prove the requisite subjective intent for either dentist to establish deliberate indifference.

  **B. Subjective Intent of Dental Assistant Defendants**

Plaintiff also names two dental assistants as defendants: Dustie Munsey and Robyn George. Along with other staff, they shared the responsibility of making dental appointments for inmates, including appointments for dental emergencies. Pl.'s Fact Statement, Ex. 36 (Munsey, Resp. Interrog. No. 9); *id.*, Ex. 38, (R. George, Resp. Request Admis. No. 2). Plaintiff alleges

that they failed to schedule an emergency dental appointment for him and that this caused him to remain in severe pain.  Martin Decl. ¶ 18.

As described above, Dr. Swyter determined that plaintiff's condition did not require prompt or urgent attention.  The dental assistant defendants complied with procedures for scheduling non-emergency dental care, per Dr. Swyter's recommendation.  Further, the dental assistants declare that plaintiff's dental appointment on April 17, 2017, was canceled because Dr. Thayer called in sick.  Pl.'s Fact Statement, Ex. 36 (Munsey, Ans. Interrog. Nos. 1, 3, & 4).  Plaintiff was housed in DSU and there were not enough correctional officers available to accompany him to a dental appointment earlier.  These facts do support an inference that either dental assistant acted with deliberate indifference to plaintiff's pain.

This case is unlike those where courts have found that the plaintiffs established the subjective component of deliberate indifference.  For example, in *Hunt v. Dental Dept.*, the defendants were aware of the plaintiff's deteriorating dental conditions, but "failed to take *any* action to relieve his pain" and the delay in treatment resulted in permanent damage to plaintiff's teeth.  *Id.* (emphasis added).  865 F.2d 198, 200 (9th Cir. 1989).  Here, plaintiff was given Gabapentin, Tylenol, and Ibuprofen to manage his pain while waiting for treatment, and the delay did not worsen his condition or result in any permanent damage that could have been avoided absent the delay—the problem teeth had to be extracted regardless.  Shook Decl. ¶ 25.  Even viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that the delay constituted an "unnecessary and wanton infliction of pain."  Plaintiff's pain was not wantonly disregarded in the sense that anyone purposely withheld care that could have immediately been provided.  Rather, the delay was caused by plaintiff's poor behavior that

caused him to be placed in DSU, the resulting necessity of providing two corrections officers to accompany him to an appointment, and Dr. Thayer's illness.

Because plaintiff has failed to demonstrate the deprivation of a constitutional right, the court need not reach the remaining issues.[2]

## ORDER

For the reasons set forth above, defendants' motion for summary judgment (ECF #82) is GRANTED, and this case is dismissed with prejudice. The court further certifies that any appeal from the order or judgment dismissing this case would be frivolous and not taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

DATED February 26, 2019.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

---

[2] To the extent plaintiff asserts new allegations against the ODOC law library, it is well settled that a response to a motion for summary judgment is not a proper vehicle for asserting new claims or adding new defendants. *E.g.*, *Perez v. Vitas Healthcare Corp.*, 739 F. App'x 405, 407 (9th Cir. 2018) (cited pursuant to Ninth Circuit Rule 36-3); *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings").

11 – OPINION AND ORDER